J-S36042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREU FRETZ | : | |
| | : | |
| Appellant | : | No. 495 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 8, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000966-2018

BEFORE: LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED JUNE 13, 2022**

Andreu Fretz (Appellant) appeals from the judgments of sentence of the Court of Common Pleas of Delaware County imposing an aggregate term of eighty-four to one hundred and eighty months of imprisonment for possession of a controlled substance with intent to deliver, knowing or intentional possession of a controlled substance, and possession of a firearm by a prohibited person.[1] He raises challenges to the denial of a pre-trial motion for the disclosure of discretionary discovery and the discretionary aspects of his sentence. Upon careful review, we affirm.

At 6:05 a.m. on January 18, 2018, the Delaware County District Attorney's Criminal Investigation Division ("CID") and the Chester City Police

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30); 35 P.S. § 780-113(a)(16); and 18 Pa.C.S. § 6105(a)(1), respectively.

Narcotics Task Force jointly executed a search warrant at 1152 Pine Lane in Chester City. N.T. 11/4/20, 76-77. The officers knocked on the front door, announced their presence as police officers, and breached the door with a ram after thirty to forty-five seconds. *Id.* at 102-03. Upon their entry, the officers observed Appellant and his girlfriend, Daynesha Dale, on a living room futon. *Id.* at 77-79. The only other furnishings in the home in addition to the futon were a television and a television stand in the same room. *Id.* at 77, 80, 82. Appellant and Ms. Dale were detained and handcuffed as the officers proceeded to execute the search warrant. *Id.* at 79-80. Detective Michael Honicker of the CID was among the police officers present and read Appellant and Ms. Dale a *Miranda*[2] warning. N.T. 11/4/20, 75, 80-82.

Inside the home, the officers recovered the following items: a plastic knotted bag containing forty Ziploc bags of crack cocaine that was found next to the television in the living room; a stolen nine-millimeter Glock 19 handgun with a fifty-round drum that was loaded with forty-seven rounds and found on the countertop in the kitchen; paperwork including criminal court-related documents which bore Appellant's name and a cable bill addressed to Ms. Dale that were found on the television stand; Appellant's cellular phone; and $36.00 that was recovered from Appellant's person.[3] N.T. 11/4/20, 82-92,

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] For purposes of sentencing, we note the total weight of the seized drugs was 6.68 grams. N.T. Trial, 11/4/20, 82, 98; 1/8/21, 8-9; Trial Exhibit CW5,
*(Footnote Continued Next Page)*

95-98, 100-101, 109-10, 112-13, 175-76; Trial Exhibit CW5, Stipulation for Lab No. H18-01045-1; Trial Exhibit CW7, Ballistics Report, 1/22/18. Following the recovery of those items, Detective Honicker informed Appellant and Ms. Dale that they were under arrest. N.T. 11/4/20, 92-93. In the absence of any police questioning, Appellant "blurted out" that the drugs and the firearm were his and that they did not belong to Ms. Dale. *Id.* at 93-94 ("[L]ook, it's all mine; the gun is mine, the drugs are mine; it has nothing to do with my girlfriend").

Detective Honicker initially trained his attention to 1152 Pine Lane after a confidential informant ("CI") provided him information concerning suspected illegal drug activity at that location. N.T. 3/22/19, 31-32. Detective Honicker had utilized this particular CI for the preceding six years, and, in just 2017, information from that CI was used for at least fifty search warrant applications. *Id.* at 31-32. While the CI had no direct knowledge of crimes occurring at 1152 Pine Lane, the CI used an unwitting informant ("UI") to gain access to that home for the purpose of buying drugs. *Id.* at 32-33, 36-37. Four controlled purchases were completed by the UI at that location between January 1, 2018, and the search warrant execution on January 18, 2018. *Id.* at 37-38, 40.

_____

Stipulation for Lab No. H18-01045-1. The trial court has incorrectly indicated that the weight of the drugs was .668 grams in its opinion. Trial Court Opinion, 4/23/21, 16, 33.

Before each of the sales, Detective Honicker would search the CI and the CI's car to ensure the absence of any drugs or currency, and then provide the CI with buy money for the UI. N.T. 3/22/19, 38-40. During each of the sales, Detective Honicker would observe, from a stationary spot near the intersection of W. 12th Street and Pine Lane, the CI driving the UI to the location, the UI gaining entry to 1152 Pine Lane, and the UI returning to the CI's car. *Id.* at 38, 40. Another detective would assist Detective Honicker with mobile surveillance. *Id.* at 40. After each of the controlled purchases, Detective Honicker would follow the CI and meet with them at a predetermined location after the UI had left the car that the CI had been driving. *Id.* at 41. Each time, the CI provided Detective Honicker with plastic knotted bags of powdered cocaine that were purchased by the UI. N.T. 3/22/19, 41; N.T. 11/4/20, 110-13.

Appellant filed an omnibus pretrial motion for discovery seeking, *inter alia*, to suppress all physical evidence and statements and to compel the Commonwealth to identify its confidential informant and the dates of the controlled substance purchases that Detective Honicker observed at 1152 Pine Lane. With respect to the request for the controlled purchase dates, which is relevant for this appeal, Appellant alleged that the information was necessary for "presenting either an alibi or potential witnesses to contradict the narrative contained within Detective Honicker's application for [the] search warrant." Omnibus Pretrial Motion, 8/30/18, ¶ 5.

Appellant took the position that "no confidential informant actually exist[ed…] and that it[ was] just a fabricated narrative in order to justify getting probable cause to search [his] house." N.T. 1/25/19, 5. The Commonwealth contested the request for the controlled purchase dates because it would "lead directly to the ascertainment of the identity of the informant." *Id.* at 12. The court granted an evidentiary hearing so Appellant could assess the veracity of Detective Honicker's statements made in support of the affidavit of probable cause resulting in the issuance of the search warrant for 1152 Pine Lane. N.T. 2/8/19, 39-43.

Detective Honicker testified concerning the surveillance operation leading up to the issuance of the search warrant. N.T. 3/22/19, 36-41. He offered his opinion that the CI would be placed in danger if their identity were revealed. *Id.* at 34-35 ("[The c]onfidential informant that I've been utilizing would probably be killed for some of the people that he or she did."); *see also id.* at 44-45 (Detective Honicker opining as to the endangerment of the CI if information about their involvement in other criminal matters were revealed), 54-55 (cross-examination of Detective Honicker concerning the possible danger to the CI that would result from revealing the CI's involvement in other criminal matters). He confirmed that he did not know the identity of the UI used by the CI. *Id.* at 44, 66. He also confirmed that he did not lose sight of the CI between the times that the UI would leave 1152 Pine Lane and the detective would meet with the CI at their predetermined meet-up location. *Id.* at 47-48.

Following the hearing, Appellant agreed that he failed to meet his burden for entitlement to the names of the CI and the UI, however, he renewed his arguments in support for his requests for, *inter alia*, the controlled purchase dates. Appellant's Memorandum Regarding Discovery Items Being Sought, 6/25/19, 1-2. He asserted that the Commonwealth failed to establish "any real, particular danger" regarding himself and the informants if his additional discovery requests were granted. **Id.** With respect to the controlled purchase dates, he alleged that it would be "confounding" to insinuate that he would be able to remember offhand who he had allegedly sold cocaine to eighteen months earlier, and thus the discovery of the dates would not lead to the discovery of the CI's identity. **Id.**

The court denied Appellant's request for the controlled purchase dates. It found that "the information sought may easily lead to the identification of the CI and UI" and Appellant fell "woefully short" of demonstrating a good faith basis that Detective Honicker had willfully included misstatements of fact in his affidavit of probable cause, and thus failed to meet his threshold burden for proving entitlement to the requested discovery. Order, 9/4/19, 9, 12-13. The court also found that the requested discovery "would jeopardize the safety of the nongovernmental informant." **Id.** at 13. Appellant filed a motion for reconsideration, alleging that Detective Honicker overstated the potential for harm to the CI by answering leading questions to which Appellant did not object. Motion for Reconsideration, 9/12/19, 3-5 & n.1. The court denied the

reconsideration motion after hearing argument from counsel. Order, 10/11/19, 1.

On November 4, 2020, the trial court denied Appellant's motion to suppress the physical evidence recovered from 1152 Pine Lane. N.T. 11/4/20, 61, 63-64; Order, 11/4/20, 1. The court also held in abeyance a ruling on his motion to suppress his statement about the drugs and the firearm. N.T. 11/4/20, 61-62, 64. Appellant proceeded to a non-jury trial. The Commonwealth presented the testimony of Detective Honicker and Officer Timothy Garron, an expert witness in the fields of the distribution and packaging of controlled substances for sale and the identification of drug paraphernalia. Appellant marked and moved into the evidentiary record a CID Incident Report with respect to his arrest and otherwise declined to present any testimony. *Id.* at 179-80. The court thereafter denied his motion to suppress his statement about the drugs and the firearm and found him guilty of the above-referenced charges.[4] N.T. 11/10/20, 26-27, 51; Order, 11/10/20, 1.

On January 8, 2021, the court sentenced Appellant to concurrent prison terms within the standard range recommended by the Sentencing Guidelines:

_____

[4] With respect to the firearms charge, defendant stipulated that he was ineligible to possess a firearm due to two prior convictions for possession of a controlled substance with intent to deliver and a prior conviction for possession of a firearm by a prohibited person. N.T. 11/4/20, 66, 99-100; Trial Exhibit CW6, Stipulation Regarding Disqualifying Offenses. Prior to trial, the Commonwealth withdrew additional charges for possession or use of drug paraphernalia and theft by receiving stolen property. N.T. 11/4/20, 65-66.

eighty-four to one hundred and eighty months for possession of a firearm by a prohibited person and thirty-six to seventy-two months for possession of a controlled substance with intent to deliver.[5]  The trial court denied a timely-

_____

[5] Knowing or intentional possession of a controlled substance merged for sentencing purposes.  N.T. 1/8/21, 4-5.

Where Appellant had a prior record score of five (see N.T. 1/8/21, 8), the Sentencing Guidelines recommended, upon applying the deadly weapon/possessed matrix for the drug offense and the standard sentencing matrix for the firearm offense, minimum prison terms of seventy-two to ninety months, plus or minus twelve months for aggravating or mitigating circumstances, for possession of a firearm by a prohibited person, and thirty to thirty-six months, plus or minus six months for aggravating or mitigating circumstances, for possession of a controlled substance with intent to deliver. 204 Pa. Code §§ 303.10(a) (deadly weapon enhancement; 7th Ed., Amend. 4), 303.15 (offense listing; 7th Ed. Amend. 4; providing offense gravity scores of seven for possession of between five and ten grams of cocaine with the intent to deliver, and eleven for a second or subsequent conviction of possession of a firearm by a prohibited person where the gun was loaded or ammunition was available), 303.16(a) (basic sentencing matrix; 7th Ed. Amend. 4), 303.17 (deadly weapon enhancement/possessed matrix; 7th Ed. Amend. 4).  Because this was a second or subsequent conviction of possession of a controlled substance with intent to deliver for Appellant, 35 P.S. § 780-115 permitted the imposition of up to twenty years of imprisonment for the drug charge.  35 P.S. § 780-113(f)(1.1)  (ten-year maximum imprisonment limit for possessing, *inter alia*, crack cocaine with the intent to distribute); 35 P.S. § 780-115 (permitting that a defendant "may be imprisoned for a term up to twice the term otherwise authorized for a conviction under 35 P.S. 780-113(a)(30).

Appellant acknowledges that the record is silent as the application of the deadly weapon enhancement for the drug charge but nevertheless agrees that it was factored into the utilized Guideline Sentence Form and the Commonwealth's recitation of the applicable guideline ranges.  Brief for Appellant, 14 n.3.  In any event, he agrees to the applicability of that enhancement for the drug charge. ***Id.***

filed post-sentence motion for reconsideration of sentence. This timely appeal

followed.[6]

Appellant presents the following issues for our review:

1. Whether the trial court erred and abused its discretion by denying [A]ppellant's motion to produce discovery, specifically the dates of four alleged drug transactions inside 1152 Pine Lane which led to [the] execution of a search warrant and [A]ppellant's arrest, in violation of Pennsylvania Rule of Criminal Procedure 573(B) and [A]ppellant's Due Process Rights under the United States and Pennsylvania Constitutions?

2. Whether the trial court erred as a matter of law and violated the discretionary aspects of sentencing when it imposed a manifestly excessive and unreasonable aggregate sentence of 7 to 15 years of incarceration, inasmuch as the trial court failed to state any reason for imposition of the sentence; the court failed to give individualized consideration to appellant's personal history, rehabilitative needs and background and applied the incorrect sentencing guidelines; and the sentence was in excess of what was necessary to address the gravity of the offense, the protection of the community and [A]ppellant's rehabilitative needs?

Appellant's Brief, at 3 (suggested answers omitted).

In his first issue, Appellant challenges the denial of his request for the

Commonwealth to disclose the dates of the controlled drug purchases.

Appellant's Brief, at 22-33. He alleges that the Commonwealth failed to

demonstrate that the release of the dates would lead to the discovery of the

---

[6] Appellant timely filed his notice of appeal within thirty days of the denial of his post-sentence motion consistent with Pa.R.Crim.P. 720(A)(2)(a). He also timely filed a statement of errors complained of on appeal within twenty-one days of the court's issuance of an order pursuant to Pa.R.A.P. 1925(b).

CI's identity and, in any event, the Commonwealth failed to "make a reasonably specific showing that the CI or UI would be placed in jeopardy due to disclosure of their identities." *Id.* at 22. He argues that the requested discovery was material to the preparation of a defense and to his ability to litigate his suppression motion and thus the court below erred by failing to grant his discovery request. *Id.* at 22-23. His assertions about the unlikelihood of potential discovery of the identity of the CI and any potential harm posed to the CI or UI are based on the fact that "the CI did not engage in any of the transactions [addressed in Detective Honicker's affidavit of probable cause] and was not present for them." *Id.* at 22, 27-28.

The court below denied the discovery request because it found that information about the dates "would easily lead to the identification of both" the CI and the UI and, in any event, Appellant had failed to make a threshold showing that Detective Honicker had willfully included misstatements of fact in his affidavit of probable cause. Trial Court Opinion, 4/26/21, 9-11, 20, 24, *quoting*, Order, 8/29/19, ¶¶ 13-18. The court noted that Appellant's "proof amount[ed] to little more than a bald denial [that illegal drugs were sold during the controlled buys addressed by Detective Honicker] and a mere allegation that certain discovery may be helpful to challenge the credibility of the police officer concerning the existence of the controlled buys." Trial Court Opinion, 4/26/21, 10, 24-25, *quoting*, Order, 8/29/19, ¶ 16.

"Questions involving discovery in criminal cases lie within the discretion of the trial court and that court's decision will not be reversed unless such

discretion was abused." ***Commonwealth v. Wilson***, 147 A.3d 7, 25 (Pa. Super. 2016). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Sandoval***, 266 A.3d 1098, 1101 (Pa. Super. 2021) (citation omitted).

The discovery in question was sought pursuant to Pa.R.Crim.P. 573(B)(2)(a)(iv) which pertains to discretionary discovery for which Appellant had the burden of proving: (1) the request for the controlled purchase dates was material to the preparation of a defense; (2) the request was reasonable; and (3) the information disclosed by the request would be in the interests of justice. Pa.R.Crim.P. 573(B)(2)(a)(iv); ***see also Commonwealth v. Garcia***, 72 A.3d 681, 684 (Pa. Super. 2013). This Court has previously explained that, in exercising its power to grant or deny a request for discretionary discovery, the trial court is to be guided by the following principle:

> In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with the protections of persons, effective law enforcement, the adversary system, and national security.

***Commonwealth v. Novasek***, 606 A.2d 477, 482-83 (Pa. Super. 1992) (addressing the precursor rule to Pa.R.Crim.P. 573(B)(2)(a)(iv), Pa.R.Crim.P. 305(B)(2)(d); citation omitted). Speaking for an equally divided court, former

Justice Stephen A. Zappala, Sr., further clarified the precursor rule to Pa.R.Crim.P. 573(B)(2)(a)(iv) in the following manner:

> [Rule 305(B)(2)(d)] requires a showing that in addition to being material to the preparation of the defense and reasonable, the request be in the interests of justice. It is important to note that the Rule speaks in terms of a showing by the *defendant*. These conditions cannot be assumed, and they must be supported by evidence on the record. It is in this context that the evidence presented at the hearing must be examined to determine whether the defendant met his burden (or more precisely whether the court abused its discretion in determining he had).

*Commonwealth v. Iannaccio*, 480 A.2d 966, 971 (Pa. 1984), *cert. denied*, 474 U.S. 830 (1985) (Zappala, J., opinion in support of affirmance, emphasis in original).[7]

In the instant case, Appellant sought the dates of the four controlled drug purchases to challenge the veracity of Detective Honicker's assertions in his affidavit of probable cause for the search warrant for 1152 Pine Lane. Appellant's theory was that Detective Honicker was untruthful, there was no confidential informant, and the assertions in the affidavit of probable cause were fabricated to create grounds for searching the Pine Lane home. He reasoned that he could not possibly contest the allegations in the affidavit of probable cause without knowing, at a minimum, the dates of the controlled

---

[7] We note that nothing in the opinions supporting reversal which were penned in *Iannaccio* by former Chief Justice Robert N.C. Nix, Jr., or former Justice Rolf Larsen contradicts Justice Zappala's above-quoted statement. *Id.*, 480 A.2d at 972-80 (Opinion in support of reversal by Nix., C.J. and Opinion in support of reversal by Larsen, J.); *Novasak*, 606 A.2d at 483 n.5.

drug purchases. At the same time, the Commonwealth did not want to reveal those dates because they reasoned that, if provided with the dates, Appellant could deduce who the UI was who made the drug purchases and then, with further investigation, deduce the identity of the CI. The Commonwealth through the testimony of Detective Honicker alleged that the CI, who was referred to as an ongoing source of information for the police, would be placed in danger if their identity were revealed.

The threshold question for this Court is whether Appellant met his initial burden of showing that the requested discovery was material to the preparation of a defense. *See Commonwealth v. Bonasorte*, 486 A.2d 1361, 1373-74 (Pa. Super. 1984) (*en banc*) ("[W]e hold that a defendant seeking production of a confidential informant at a suppression hearing must show that production is material to his defense, reasonable, and in the interest of justice"). In **Bonasorte**, the discretionary discovery at issue was the identity of a police informant and the defendant, like Appellant, wanted the discretionary discovery to advance his claim that a police-officer affiant willfully included misstatements of facts in an affidavit of probable cause. This Court held that, in those circumstances, the defendant had the initial burden to demonstrate: (1) "some good faith basis in fact" to believe that the police officer-affiant included misstatements of fact in their affidavit of probable cause "which misrepresents either the existence of the informant or the information conveyed by the informant;" (2) that, without the informant's information, there would not have been probable cause; and (3) that the

production of the informant is the only way in which the defendant can substantiate his claim. *Id.* at 1374. Only after such a showing is made by the defendant would the issue of the production of the informant be within the discretion of the court. *Id.*

Pursuant to *Commonwealth v. Hall*, 302 A.2d 342 (Pa. 1973), a defendant can challenge the veracity of facts establishing probable cause recited in an affidavit supporting a search warrant, through cross-examination of the police officer-affiant, without any prior showing of the potential falsity of those facts. "If the only 'evidence' produced at the suppression hearing is a defendant's bald assertion (e.g., that the informant does not exist or that the affiant misrepresented information conveyed by [the] informant), then the defendant has failed to meet his threshold burden" for seeking production of the identity of a police informant. *Bonasorte*, 486 A.2d at 1374.

The instant case differs from *Bonasorte* in the sense that Appellant was seeking the dates of the controlled purchases rather than directly seeking the identity of the CI used by Detective Honicker. This Court and our Supreme Court, however, have afforded the same protection granted to the identity of confidential informants to other information concerning surveillance operations that advance the same goal of protecting identities of individuals who provide information to the police or prosecutors regarding criminal activities. *See, e.g., Commonwealth v. Rodriguez*, 674 A.2d 225, 228 (Pa. 1996) (holding that the same balancing test that applies to requests for the discovery of the identities of confidential informants is equally applicable to

cases where the Commonwealth asserts that disclosure of an exact surveillance location would jeopardize an ongoing investigation or place individuals in peril); *Commonwealth v. Jennings*, 630 A.2d 1257, 1261 (Pa. Super. 1993) (discovery of a police officer's confidential surveillance site is discretionary with a trial court and is subject to qualified privilege).

We find no abuse of discretion with the trial court's application of the *Bonasorte* opinion when reviewing Appellant's request for the controlled purchase dates. The court treated the request for the controlled purchase dates like a request for the identity of the utilized CI because it reasoned that the information requested "would easily lead to the identification" of both the CI and the UI. Trial Court Opinion, 4/26/21, 21. That finding was consistent with Detective Honicker's testimony, N.T. 3/22/19, 34-35, 44-45, and was reasonably accepted where the court inferred that the exact dates for the four visits to the 1152 Pine Lane home in a less-than-three week span would have allowed whoever was conducting those drug sales at that location to deduce the identity of the UI and, with further investigation, the identity of the CI. For purposes of evaluating Appellant's discovery request claim, this Court cannot upset the credibility determinations of the suppression court, "within whose sole province it is to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Poplawski*, 130 A.3d 697, 711 (Pa. 2015).

After determining that the trial court acted within its discretion when it treated the request for the dates as akin to a request for the CI's identity, the

next question is whether Appellant demonstrated "some good faith basis in fact" to believe that Detective Honicker included misstatements of fact in his affidavit of probable cause. Here, the record supports the trial court's conclusion that Appellant fell short of satisfying that burden. Trial Court Opinion, 4/26/21, 24 ("No evidence was presented to call into question the veracity of Det. Honicker's averment that the four separate controlled buys occurred in January 2018."). Appellant appeared to concede as much during his counsel's argument for reconsideration of the denial of his discovery request when his counsel referred to the basis for his request itself as a "bald assertion." N.T. 10/9/19, 5 ("All of the information that we could show that would rise above the Defendant's bald assertion that this didn't happen, is being withheld by the Commonwealth.").

Appellant had the opportunity pursuant to *Hall* to pursue cross-examination of Detective Honicker to test the veracity of his affidavit of probable cause. The trial court, consistent with the record, concluded that Detective Honicker's testimony at that hearing did not support the notion that the detective misrepresented the information included in the affidavit. Appellant's bald assertion as to the potential usefulness of the dates for purposes of impeaching Detective Honicker's testimony was inadequate to sustain Appellant's discovery request where he failed to otherwise demonstrate a good faith basis for showing that the detective presented misstatements in his affidavit. *Commonwealth v. Herron*, 380 A.2d 1228, 1230 (Pa. 1977) ("[B]efore disclosure of an informer's identity is required in

the face of the Commonwealth's assertion of privilege, more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense."); *Commonwealth v. Belenky*, 777 A.2d 483, 488 (Pa. Super. 2001) ("More than a mere assertion that disclosure of the informant's identity might be helpful is necessary.").

With his instant claim, Appellant appears to be alleging that whenever a defendant cannot demonstrate the materiality of his discovery request then the request should be automatically granted because disclosure of the discovery could potentially lead to further information for investigation. If we were to agree with him, contrary to *Bonasorte*'s discussion of his own threshold burden for his request, every suspect subject to a search warrant under analogous circumstances would be able to assert that a controlled purchase with a CI never occurred and thereby request production of the CI knowing the Commonwealth's reluctance to expose its confidential informants, thereby hoping that the Commonwealth either withdraws the charge or suffers suppression so as to protect its informant from possible harm. Such a rote outcome would undermine the public interest which supports the basis for the Commonwealth's qualified privilege as to the protection of their informant's identity. *See Commonwealth v. Baker*, 946 A.2d 691, 696 (Pa. Super. 2008) ("As this Court has repeatedly noted, there is an important 'public interest in protecting the free flow of information' in furtherance of effective law enforcement.") (citation omitted).

Having failed to demonstrate a good faith basis for his misstatements-of-fact theory for disclosure, Appellant alternatively posits that "[t]he information could have led to a potential alibi defense." Appellant's Brief, at 23. That assertion is unavailing. He could not demonstrate that the controlled purchase dates were material for that hypothetical defense because he was charged with the offenses resulting from the search, not the controlled purchase sales, and the validity of the search at 1152 Pine Lane had nothing to do with the identity of the person who sold drugs to the UI on the undisclosed dates. Whether that person was Appellant or not, the sales established probable cause and the search would still have occurred. As Appellant's guilt was fully proven by the recovery of the drugs and the gun during the search and Appellant's own inculpatory statement as to his ownership of the drugs and the gun, an alleged alibi for the controlled purchase dates would not have advanced a trial defense. *See Belenky*, 777 A.2d at 489 (Belenky's reliance on opinions in single transaction sales cases was misplaced with respect to his request for disclosure of a confidential informant's identity where he was charged with offenses resulting from a search, rather than from sales).

For purposes of his discovery request, Appellant failed to make the threshold showing that there was a good faith basis for his misstatements-of-fact claim which formed the basis of his baldly-asserted suppression claim. In the alternative, he was unable to demonstrate that the controlled purchase dates would have been material for the preparation of a trial defense. Because

the trial court acted within its discretion when it denied Appellant's discovery request, his first issue lacks merit.

In his second issue, Appellant challenges the discretionary aspects of his sentence which included concurrent terms within the standard range recommended by the Sentencing Guidelines. Appellant's Brief, at 33-41; *see also* *supra* n.3. In particular, he alleges that the court abused its discretion by: (1) imposing "a manifestly excessive and unreasonable" aggregate sentence; (2) failing to state any reasons for the imposition of the sentence; (3) failing to give individual consideration to his personal history, rehabilitative needs, and background; (4) applying an incorrect sentencing guideline range by miscalculating his prior record score; and (5) sentencing him in excess of what was necessary to address the gravity of the offense, the protection of the community, and his rehabilitative needs. Upon our review, we conclude that this claim is waived as unpreserved and, in any event, meritless.

There is no absolute right to appellate review of a discretionary sentencing claim. *Commonwealth v. Solomon*, 247 A.3d 1163, 1167 (Pa. Super. 2021) (*en banc*). Rather,

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

- 19 -

*Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018) (citation omitted). Following satisfaction of all four elements, this Court then reviews the underlying discretionary aspects of sentencing issue, pursuant to an abuse of discretion standard. *Commonwealth v. Akhmedov*, 216 A.3d 307, 328-29 (Pa. Super. 2019) (*en banc*).

We initially note that Appellant has failed to preserve his instant claim for review. A defendant must preserve a discretionary sentencing claim either at sentencing or in a timely-filed post-sentence motion, otherwise the claim is waived on direct review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.Crim.P. 720(A)(1), (B)(1)(a)(v) (setting the time-limit for filing a post-sentence motion and noting that a post-sentence motion may include a motion for modification of sentence); *see also Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (holding that objections to the discretionary aspects of a sentence are generally waived if they are not raised at sentencing or preserved in a post-sentence motion).

At sentencing, defendant did not raise any challenges to the discretionary aspects of his sentence following the imposition of his concurrent terms of imprisonment. N.T. 1/8/21, 48-60. In a timely post-sentence motion, he raised a single discretionary sentencing claim alleging an as-applied due process violation/cruel and unusual punishment claim concerning the trial court's use of the recommended Sentencing Guideline ranges, as follows:

4.    At sentencing, and with our presentence memorandum, defendant was asking Your Honor to disregard the guidelines as they applied in this case on Constitutional due process concerns.

5.    This motion for reconsideration is being filed to preserve our arguments against the guidelines that have been associated with these charges, both under due process and cruel and unusual punishment provisions found in U.S. CONST. AMEND. VIII and PA CONST. ART. I, § 13.

6.    Because the argument of the defendant is a hybrid between constitutionality concerns and discretionary sentencing concerns, the defense did not want to fall victim to the "waiver" precedents that undo many legal arguments on appeal.

7.    The defense is therefore preserving in this motion, and asking Your Honor to once again reconsider the legality, applicability, and constitutionality of the guidelines as they relate to this case, most particularly those associated with 18 Pa.C.S. [§] 6105(a.1)(1)(1.1)(I)(A).

8.    Because the guidelines are excessively harsh and should therefore not be applied to this defendant, we are arguing that the sentence imposed by Your Honor, though following the guidelines, constitutes an abuse of discretion, because it is unduly harsh and excessive under these particular circumstances.

Post-Sentence Motion, 1/15/21, ¶¶ 4-8 (footnotes omitted).

The claim raised in the post-sentence motion referenced his arguments in his pre-sentence memorandum and his arguments prior to the imposition of his sentence in which he asserted that the guidelines should not be applied in his case because they recommended significant jail time for non-violent offenses, he was rendered ineligible to possess a firearm due to prior non-violent offenses, and the guidelines' treatment of recidivist violators of 18 Pa.C.S. § 6105 fostered systemic racism. Pre-Sentence Memorandum,

12/16/20, 7-14; N.T. 1/8/21, 40-42, 44-47. That due process violation/cruel and unusual punishment claim is distinct from all of his discretionary sentencing arguments raised on appeal. Accordingly, defendant waived his instant claim. **See Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003) (discretionary sentencing claim waived where, although appellant filed a post-sentence motion for reconsideration of sentence, the motion did not include the specific claim raised on appeal); **Commonwealth v. Reeves**, 778 A.2d 691, 692-93 (Pa. Super. 2001) (by failing to raise the specific claim that the trial court failed to state reasons for its sentence on the record in a post-sentence motion, the trial court was deprived of an opportunity to consider the claim and thus the claim was waived on appeal).

In any event, even assuming *arguendo* that Appellant fully preserved his claim and demonstrated that each of his distinct arguments raised substantial questions for review, we cannot conclude in these precise circumstances that the trial court abused its discretion by imposing concurrent sentences within the standard range recommended by the Sentencing Guidelines.

Upon conducting a merits analysis for a discretionary sentencing claim, we are mindful of the following principles:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Moye*, 266 A.3d 666, 676-77 (Pa. Super. 2021) (citation omitted). This deferential standard is based on the recognition that "the nuances of sentencing decisions are difficult to gauge from the court transcript used upon appellate review." *Commonwealth v. Perry*, 32 A.3d 232, 236 (Pa. 2011), *quoting Commonwealth v. Walls,* 926 A.2d 957, 961-62 (Pa. 2007).

At the outset, Appellant's characterization of his sentence as excessive and unreasonable is not supported by the record. Because his individual terms of imprisonment are within the standard range recommended by the Sentencing Guidelines, they are presumptively reasonable and, for this Court to vacate them, Appellant would need to demonstrate that the application of the guidelines in this case would have been clearly unreasonable. *See* 42 Pa.C.S. § 9781(c)(3) (appellate court must vacate sentence imposed within the sentencing guidelines only if it "involves circumstances where the application of the guidelines would be clearly unreasonable"); *see also Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) ("[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."); *Commonwealth v. Bonner*, 135 A.3d 592, 604 (Pa. Super. 2016) ("In this case, Appellant was sentenced within the sentencing guidelines. Accordingly,

we may only vacate if this 'case involves circumstances where the application of the guidelines would be clearly unreasonable[.]'") (citation omitted).

To prove that his sentence was unreasonable or that the application of the guidelines was unreasonable, Appellant would necessarily need to demonstrate circumstances that would have necessitated the imposition of a sentence within the mitigated range recommended by the guidelines or below that range. With the exception of a "double counting factors" claim that we will address *infra*, Appellant does not address any mitigating circumstances in his argument. He claims that the application of the guidelines was unreasonable because the trial court supposedly did not consider sentencing factors enumerated at 42 Pa.C.S. § 9721(b), however, he fails to apply those factors to his own circumstances to show that his sentence was inconsistent with the protection of the public, his rehabilitative needs, and the gravity of his offenses as they related to the community. Appellant's Brief, at 38. Had he attempted to make such a demonstration he would have struggled to characterize his instant offenses as an unfortunate aberration, inconsistent with his character and needs, where the record reflected that he committed his instant firearm and drug offenses while on parole for prior firearm and drug charges and was arrested for the instant charges within 66 days of being paroled on the former charges. N.T. 1/18/21, 6-8, 16; Commonwealth's Sentencing Memorandum, 12/30/20, 2-6 (unnumbered).

To the extent that Appellant alleges that the trial court abused its discretion by not offering a statement of reasons on the record for imposing

concurrent sentences within the standard range recommended by the Sentencing Guidelines, he fails to cite any existing precedent supporting an argument for vacation of his sentence on that basis. This Court has rejected similar arguments. *See Commonwealth v. Leatherbury*, 116 A.3d 73, 83 (Pa. Super. 2015) ("Here, each of Leatherby's sentences was within or below the standard range of the sentencing guidelines … Thus, the trial court was not required to provide a statement of reasoning and this claim does not raise a substantial question."); *Commonwealth v. Szarko*, 616 A.2d 26, 27 (Pa. Super. 1992) (court was not required to provide a contemporaneous written statement for a deviation from the guidelines where it imposed a sentence within the standard range of the guidelines). In any case, this subpart of Appellant's claim is unavailing because, by indicating on the record that it possessed and reviewed a pre-sentence investigation report, the trial court nevertheless satisfied the requirement of stating its reasons for the sentence on the record. N.T. 1/8/21, 51 (trial court confirming that it had reviewed and considered a pre-sentence investigation report). *See Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004) ("The sentencing judge can satisfy the requirement that reasons for imposing sentencing be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors."); *accord Commonwealth v. Miller*, --- A.3d ---- 2022 WL 1482496, *4 (Pa. Super., filed May 11, 2022); *Commonwealth v. Edwards*, 194 A.3d 625, 638 (Pa.

Super. 2018); *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009).

The court's review of a pre-sentence investigation report also rendered meritless Appellant's assertion that the court failed to give requisite consideration of the statutory sentencing factors under 42 Pa.C.S. § 9721(b) and any relevant mitigating factors. When a court possesses a pre-sentence investigation report, it is presumed that the court "was aware of the relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *see also Miller*, --- A.3d ----, at *3 ("Notably, where a sentencing court is informed by a PSI, 'it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.'") (citation omitted).

Appellant also fails to demonstrate an abuse of discretion by noting that the court did not specifically reference the statutory sentencing factors under 42 Pa.C.S. § 9721(b). We note, "[t]he [sentencing] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b), [however,] the record as a whole must reflect due consideration by the court of the statutory considerations at the time of sentencing." *Commonwealth v. Johnson-Daniels*, *167* A.3d 17, 26 (Pa. Super. 2017) (internal citation and quotations omitted). Here, the court noted that it had considered the pre-sentence investigation report, a

psychological evaluation, a substance abuse evaluation, and the pre-sentence memorandums prepared by the parties in formulating its sentence. N.T. 1/8/21, 51-52. The court also notes in its opinion that it considered "Appellant's background, personal history, extensive criminal background including prior convictions for Possession with Intent to Deliver a Controlled Substance and Person Not to Possess a Firearm, and the rehabilitative needs of the Appellant." Trial Court Opinion, 4/26/21, 39. Moreover, the court heard arguments from counsel that now cover forty-five pages of notes of testimony before it announced its sentence. Based on the foregoing, we conclude that the court imposed an individualized sentence.

Lastly, Appellant argues that the court incorrectly applied the Sentencing Guidelines because his prior conviction for possession of a controlled substance with intent to deliver, which rendered him ineligible to a possess a firearm, was factored into the calculation of his prior record score. Appellant's Brief, at 39-40. He reasons that the prior drug conviction was an element of his new firearms offense and thus the consideration of that drug conviction for the prior record score calculation resulted in an improper double-counting of sentencing factors. *Id.* In support of this claim, Appellant relies on the Supreme Court's decision in **Commonwealth v. Jemison**, 98 A.3d 1254 (Pa. 2014), for the holding that a prior conviction of a specific, enumerated offense is an element of the offense of possession of a firearm by a prohibited person, and the Sentencing Guideline's prohibition at 204 Pa. Code § 303.8(g)(3) on factoring in a prior record score "[a]ny prior conviction

which contributed to an increase in the grade of a subsequent conviction, except for prior Driving Under Influence of Alcohol or Controlled Substances convictions." Appellant's Brief, at 39-40.

This Court rejected an identical claim concerning a prior record score calculation for a conviction for possession of a firearm by a prohibited person in an unpublished opinion in **Commonwealth v. McSorley**, 2019 WL 3306744 (Pa. Super., filed July 23, 2019) (unpublished memorandum). **See** Pa.R.A.P. 126(b)(1)-(2) (non-precedential decisions of this Court filed after May 1, 2019 may be cited for persuasive value). McSorley, like Appellant, relied on **Jemison** as his principal support and this Court rejected the same interpretation that Appellant has of the decision in that case:

> McSorley's reliance on **Jemison** is misguided because **Jemison** did not address sentencing. **Compare** Appellant's Brief, at 12 (arguing **Jemison** overturned [**Commonwealth v. Keiper**, 887 A.2d 317 (Pa. Super. 2005)] *sub silencio* by categorizing prior convictions as an element of persons not to possess) with **Jemison**, 98 A.3d at 1262 (holding defendant did not suffer unfair prejudice by admission into evidence of certified conviction to prove prior conviction element of persons not to possess). As McSorley's prior conviction did not change the grade of his current offense, we find that the trial court did not abuse its discretion by including his prior conviction for escape in calculating his [prior record score]. **See id.** Consequently, both his first and third claims fail.

**McSorley**, 2019 WL 3306744, at *2.

This Court's analysis in **McSorley** remains sound in this instance. **Jemison** did not issue a ruling concerning the application of the Sentencing Guidelines to a conviction for possession of a firearm by a prohibited person.

In addition, Appellant's prior conviction for possession of a controlled substance with intent to deliver, like McSorley's prior conviction for escape, did not change the grade of his firearms offense. The conviction only provided a factual predicate for the application of the offense under section 6105(a)(1). **See Commonwealth v. Keiper**, 887 A.2d 317, 321 (Pa. Super. 2005) (treating a prior burglary conviction as merely a precondition to a violation of section 6105 that did not change the grading of Keiper's conviction for possession of a firearm by a prohibited person). Additionally, the prior drug conviction could not constitute a factor for a double-counting error under 204 Pa. Code § 303.8(g)(3) because that section of the Sentencing Guidelines plainly creates an exception for "Controlled Substances convictions." Defendant thus failed to prove an abuse of discretion through his unpreserved claim alleging an improper double counting of sentencing factors.

Appellant failed to preserve his discretionary sentencing claim before the trial court and, accordingly, waived it. Even if the claim was properly preserved and reviewable, it failed to demonstrate that the imposition of concurrent sentences within the standard range recommended by the Sentencing Guidelines, following the trial court's review of, *inter alia*, a pre-sentence investigation report, was an abuse of discretion. **See Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010) (combination of pre-sentence investigation report and standard range sentence, absent more, cannot be considered excessive or unreasonable).

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/2022